UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
NICKI CHRISTODOULOU,                           :        99 CV 1847 (ARR)
                                                :
                        Petitioner,             :        <u>NOT FOR</u>
                                                :        <u>PUBLICATION</u>
        -against-                               :
                                                :        <u>OPINION AND ORDER</u>
GEORGE F. DUNCAN, Superintendent,               :
                                                :
                        Respondent.             :
                                                :
------------------------------------------------------------------ X

ROSS, United States District Judge:

Petitioner pro se Nicki Christodoulou filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 1, 1999. Petitioner filed an amended petition on October 18, 1999, and was subsequently granted a stay to exhaust state court remedies. Following the conclusion of state court proceedings, petitioner filed an amended petition dated September 10, 2004. In his amended petition, Christodoulou contends that: (1) he was unduly prejudiced at trial by the prosecutor's inability to produce an eyewitness to whom the prosecutor referred in his opening statement; (2) he was denied a fair trial by the state trial court's evidentiary ruling allowing the prosecution to introduce uncharged evidence of bad acts; (3) he was denied a fair trial by the state court's unbalanced marshaling of the evidence during its charge to the jury; (4) he was denied effective assistance of trial counsel due to his attorney's failure to file a timely notice of alibi and for failing to present an alibi defense on defendant's behalf; and (5) he was denied effective assistance of trial counsel due to his attorney's failure to request a missing

1

witness charge when the prosecutor failed to produce an eyewitness to whom he had alluded during opening statements. For the reasons set forth below, his petition is denied.

## BACKGROUND

Following a jury trial, petitioner was convicted of second-degree murder. On February 14, 2005, after having found that he was a second violent felony offender, the court sentenced petitioner to an indeterminate term of imprisonment of twenty-five years to life. Defendant is incarcerated pursuant to this judgment.

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. In his brief on appeal, petitioner claimed (1) that he was unduly prejudiced at trial by the prosecutor's inability to produce an eyewitness to whom he referred in his opening statement; (2) that he was denied a fair trial by the state court's evidentiary ruling allowing the prosecution to introduce uncharged evidence of bad acts; (3) that he was denied a fair trial by the state trial court's unbalanced marshaling of the evidence during its charge to the jury; and (4) that the sentence imposed on defendant, the statutory maximum, was excessive and should be reduced in the interest of justice. By memorandum decision and order dated December 8, 1997, the Appellate Division affirmed petitioner's conviction. People v. Christodoulou, 245 A.D.2d 386 (2d Dep't 1997). The Appellate Division found petitioner's contention that the state trial court improperly marshaled evidence unpreserved for appellate review and without merit. The Appellate Division found defendant's remaining claims "without merit." Id. By certificate dated April 8, 1998, petitioner was denied leave to appeal to the Court of Appeals. People v. Christodoulou, 91 N.Y.2d 971 (1998).

In his original habeas petition, dated March 19, 1999, petitioner raised each of the claims presented in his state appeal. Petitioner amended his petition on October 8, 1999, withdrawing his excessive sentencing claim. At petitioner's request, this court stayed the petition for exhaustion of state remedies.

On July 5, 2000, Petitioner filed a motion pursuant to N.Y. Criminal Procedure Law § 440.10, claiming ineffective assistance of trial counsel. Specifically, plaintiff claimed that (1) trial counsel was ineffective for failing to file a timely notice of alibi and for failing to present an alibi defense on defendant's behalf; and (2) trial counsel was ineffective for failing to request a missing witness charge when the prosecutor failed to produce an eyewitness to whom the prosecutor had alluded during opening statements. The New York Supreme Court, Kings County, ordered a hearing on the motion and assigned counsel to represent defendant. Because petitioner's trial counsel was deceased, he was unable to give testimony. In an order dated October 31, 2002, the New York Supreme Court denied defendant's 440.10 motion. The court found that the ineffective assistance of counsel claim arising out of counsel's failure to request a missing witness charge was procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(C), because "the challenge could have been raised on defendant's direct appeal." People v. Christodoulou, Indict. No. 1079/94 (Sup. Ct., Kings Co., Nov. 26, 2002). The court credited the in-court statement of retired Justice Beldrock that defense counsel "handled [the] matter in a competent manner" and found that defense counsel had made the strategic choice not to pursue an alibi defense. On July 13, 2004, the Appellate Division denied petitioner's application for leave to appeal the Supreme Court's order.

3

By letter dated July 28, 2004, petitioner sought leave to reopen his habeas petition and to amend his petition to include his exhausted ineffective assistance of counsel claims. The court granted petitioner's request, and an amended petition followed.

## DISCUSSION

1. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court "(1) arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or (2) decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. A decision is deemed an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

4

principle to the facts of [a] prisoner's case." Id. "Under the latter standard, 'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411). The Second Circuit has added, however, that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2000) (internal quotation marks and citations omitted). Under AEDPA, a federal court must defer to the state court's findings of fact, which are "presumed to be correct." 28 U.S.C. § 2254(e). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. This deferential standard applies whenever the state court has adjudicated the federal claim on the merits, even if it did not explicitly refer to the federal claim or discuss the reasoning for its decision, as long as the decision finally resolved a party's claims and was based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

2. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a state

5

court holding contains a plain statement that a claim is procedurally barred, then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989).

3. The Prosecutor's Failure to Produce a Witness Referred to in his Opening Statement

Christodoulou claims that he did not receive a fair trial because the prosecutor failed to produce at trial an eyewitness to the shooting whose testimony he summarized in his opening statement. Petitioner raised this claim on direct appeal, at which time, the Appellate Division summarily rejected it in its catch-all ruling that "defendant's remaining contentions are without merit." People v. Christodoulou, 25 A.D.2d at 386. Accordingly, this court will review the state court's decision under the deferential standard of review of AEDPA.[1]

In his opening statement at trial, the prosecutor summarized the expected testimony of Morris Richberg, an eyewitness to the murder. Specifically, the prosecutor told the jury that he expected Mr. Richberg to testify that he knew the defendant for years, that he was with him the day before at the location of the murder, and that at approximately 9:00pm on the day of the murder the defendant left the location, returning about five and a half hours later carrying a loaded shotgun. Further, Mr. Richberg was expected to testify that petitioner pointed the shotgun

---

[1] Petitioner contends that the state court's decision is not entitled to any deference because "the material facts were not adequately developed upon appellate review." This argument clearly fails. On habeas review, "[t]he factual findings of the New York Courts are presumed to be correct." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1999) (internal quotations and citation omitted). "[T]he statutory presumption refers to historical facts, that is, recitals of external events and the credibility of the witnesses narrating them." Id. (internal quotations and citation omitted). "The presumption of correctness will be set aside if the material facts were not adequately developed at the State court hearing or if the reviewing court finds that the factual determination is not fairly supported by the record." Smith v. Mann, 173 F.3d 73, 76 (2d Cir. 1999). Contrary to petitioner's argument, however, a state appellate court is not required to make factual findings, nor even recite those made by the trial court.

6

at both the victim and Mr. Richberg, and that the victim tried to get away from the petitioner, at which point the petitioner shot the victim at point blank range, killing him immediately. The prosecutor, however, was unable to produce the eyewitness referenced because he disappeared before trial.

According to Supreme Court precedent, not every variance between a prosecutor's summary of the testimony he anticipates presenting and the testimony actually presented constitutes reversible error. Frazier v. Cupp, 394 U.S. 731, 735-36 (1969). In Frazier, the prosecutor in a murder prosecution summarized the testimony of an expected witness, specifically a co-defendant who had pleaded guilty. Upon taking the stand, however, the co-defendant invoked his privilege against incrimination and was dismissed from the stand. After conviction, the defendant sought habeas relief, arguing that the prosecutor's summary of the expected testimony in his opening statement was akin to testimony, and that he was thus deprived of his Sixth Amendment right of confrontation. The jury in Frazier was instructed that opening statements should not be considered evidence. Id. at 735. Denying habeas relief, the Court reasoned that the jury could be trusted to "limit its consideration to the evidence introduced during the trial." Id. at 736. "At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately." Id. (internal quotation marks and citation omitted). The Supreme Court found that "the limiting instructions given were sufficient to protect petitioner's constitutional rights." Id.

7

In the instant case, the court explained in its initial jury instructions that opening statements by either side were "not evidence." Respondent's Ex. B2 at 6. In addition, in its final charge, the court explained that the jurors were "not bound to accept the arguments of respective counsel," but were free to accept or "disregard those statements entirely." Respondent's Ex. B5 at 338. The prosecutor's summary of Richberg's expected testimony was but one small part of his opening statement to the jury. Although the jury was told that Richberg was an eyewitness to the events, there was ample evidence in the record from which the jury could conclude that defendant had shot the victim. In light of the limiting instructions given and the ample evidence against he defendant, this court cannot say that the state court's denial of this claim resulted in a decision contrary to, or involving an unreasonable application of, clearly established Federal law.

4. Admission of Evidence of Uncharged Crime

Petitioner next alleges that the state court's admission of uncharged crime and prior bad act evidence deprived him of his right to a fair trial. Specifically, petitioner objects to the admission of evidence that earlier on the day of the incident petitioner had been smoking crack with the occupants of the apartment in which the shooting occurred.

In order to succeed on this claim, petitioner must establish (1) that the trial court's evidentiary ruling was erroneous as a matter of state law, and (2) that the erroneous admission of this evidence deprived him of a fair trial. Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001). Here, admission of the prior bad act evidence was not contrary to state evidentiary rules. Under New York law, evidence of uncharged criminal conduct is not admissible if it tends to show only criminal propensity. The trial court may admit such evidence, however, "if it helps to establish some element of the crime under consideration or is relevant because of some

8

recognized exception to the general rule." People v. Alvino, 71 N.Y.2d 233, 241-44 (1987). Evidence of uncharged crimes may be relevant to show intent, motive, knowledge, common scheme or plan, or identity of the defendant. Id. Such evidence also may be admitted if it is necessary to complete the narrative of events surrounding the alleged crimes. People v. Davis, 251 A.D.2d 91 (1st Dept. 1998).

Here, the trial court allowed testimony that the petitioner had smoked crack cocaine with Angela Williams, one of the prosecution witnesses, and others in the apartment on the day of the shooting, reappearing with a shotgun several hours later. After carefully considering this and other potential evidence at a pre-trial hearing, the court deemed this evidence necessary to complete the narrative of events and describe the circumstances under which petitioner spent time with prosecution witnesses earlier on the night of the crime. See Respondent's Ex. A2 at 5-16. The defense planned to examine prosecution witnesses about their use of cocaine earlier in the evening to call into question their ability to identify petitioner as the shooter. Id. The fact that petitioner has used drugs with the others provided the jury with a more complete account of the time petitioner had spent with the witnesses at the apartment. Other evidence, namely testimony that petitioner had brandished a knife and testimony regarding an underlying dispute between petitioner and the eventual victim, was excluded as more prejudicial than probative. Further, to guard against any prejudice, the judge offered to instruct the jury that they could not use the fact that petitioner had smoked crack as a basis for making a decision as to the guilt of the petitioner. Respondent's Ex. A2 at 16

Even assuming that the state court evidentiary ruling was erroneous under New York law, such a violation merits habeas relief only where petitioner can show that the error deprived him

of a fundamentally fair trial. Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983). In light of the strong evidence against him, including his identification as the shooter by witnesses with whom he was familiar and ballistics evidence consistent with their testimony, this court cannot conclude that admission of testimony regarding petitioner's drug use deprived him of a fundamentally fair trial.

5. The Court's Marshaling of the Evidence

Christodoulou next contends that the trial court marshaled the evidence in an unbalanced manner, which deprived him of a fundamentally fair trial. Essentially, he argues that the court's summary of Angela Williams' testimony in its jury instructions was prejudicial because the court did not also state that Williams was high on crack cocaine when the shooting occurred and that defendant's fingerprints were not found on the gun recovered at the scene.

This claim is procedurally barred. The Appellate Division explicitly found petitioner's claim that the trial court had improperly marshaled evidence in its charge to the jury to be unpreserved for appellate review. This finding was based on an independent and adequate state ground, and thus petitioner is procedurally barred from obtaining federal habeas review unless he shows either cause for the default and prejudicial effect, or demonstrates with sufficient probability that the court's failure to review the claim will result in a "fundamental miscarriage of justice." Edward v. Carpenter, 529 U.S. 446, 451 (2000).

Recognizing the requirement to show cause and prejudice, petitioner argues that the procedural default of this claim should be excused because it is the result of his attorney's error. Attorney error may constitute "cause" excusing the procedural default if the error is so egregious that counsel's performance fails to satisfy the defendant's Sixth Amendment right to effective

assistance of counsel. See id. (citing Murray v. Carrier, 477 U.S. 478, 488-89 (1986)). To claim that attorney error excuses a procedural default, a habeas petitioner must either have properly presented and exhausted an ineffective assistance of counsel claim in the state courts or, if the ineffective assistance of counsel claim is itself procedurally barred, separately show that there is "cause" excusing said procedural default as well as prejudice resulting from the error. See id. at 453.

Petitioner has never presented to the state courts his claim that his trial counsel was ineffective for failing to object to the court's marshaling of the evidence, and such a claim, which is not subject to collateral review, is now defaulted in the state. See N.Y. Crim. Proc. Law § 440.10(2)(c), 440.30 (30)(2) (collateral review not available for claims reviewable from the record); N.Y. Court Rules § 500.10(a) (only one application for direct review of conviction permitted). Because petitioner's ineffective assistance claim based on his trial counsel's failure to object to the court's marshaling of the evidence is barred by state procedural rules, it is procedurally barred from federal habeas review as well. See Coleman, 501 U.S. at 750. Petitioner has shown no "cause" excusing the procedural default of this ineffective assistance of counsel claim. Attorney error, therefore, cannot serve as "cause" excusing the procedural default of petitioner's claim that the court improperly marshaled the evidence.

In any event, petitioner's claim that the court's marshaling of evidence in its instructions to the jury deprived him of a fundamentally fair trial is without merit. In order to obtain habeas relief based on an error in the state court's instructions to the jury, petitioner must show that the error violated a right guaranteed by federal constitutional law. See Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1978); Casillas v. Scully, 769 F.2d 60, 63 (2d Cir.

1958). The relevant issue is not whether the instruction was "undesirable" or "erroneous," but rather "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147. "In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its total context." Brooks v. Ricks, No. 00 Civ. 3746, 2003 U.S. Dist. LEXIS 13646, at *11 (E.D.N.Y. July 29, 2003) (citing Cupp, 414 U.S. at 146-47).

After explaining the concept of circumstantial evidence to the jury, the trial court instructed the jury as follows:

> I am going to go over what I believe were the circumstantial facts in this case.
>
> We heard a witness testify, Angela Williams that she was in this particular apartment the day – the evening in question, and that she saw a person whom she saw and she knew to be the defendant come into the apartment and point a gun at the individual who was the deceased in this case, Philip Berghout.
>
> She said, at that point, I didn't stay around, I ran into the bathroom.
>
> She said, while she was in the bathroom, she heard various conversations, which I think have been described by the attorneys, what Mr. Berghout, the deceased, said, what another person who was in the apartment said, and what allegedly the defendant said, and then, after all of those statements were made, she said she heard a shot. She said when she came out of the bathroom she saw Mr. Berghout lying on the floor, in the hallway, at the door, that she then left the apartment and he was lying on the floor as she left.
>
> So she said she told us she saw the defendant with a gun, but she never saw anybody fire the gun. She told us what she saw. Those are what we call circumstantial facts.

Respondent's Ex. B5 at 352-53.

Under New York law, in its charge to the jury, a trial court "must . . . state the material legal principles applicable to the particular case, and, so far as practicable, explain the application of the law to the facts, but it need not marshal or refer to the evidence to any greater extent than is necessary for such explanation." N.Y. Crim. Proc. Law § 300.10(2). The trial court exercised its discretion to marshal for the jury those facts it deemed necessary to explain the application of the law to the facts. The court is not required to "explain all the contentions of the parties or outline all the inconsistencies of the evidence." People v. Saunders, 64 N.Y.2d 665, 667, 474 N.E.2d 610, 485 N.Y.S.2d 250 (1984). Nor is the marshaling of the evidence "subject to an equal time requirement." Johnson v. Scully, 727 F.2d 222 (2d Cir. 1984). The jury was informed that the role of determining the facts solely and exclusively belonged to it. So too, the court instructed the jury that they could consider Williams' bad acts and inconsistent statements in judging her credibility. Respondent's Ex. B5 at 345. The trial court did not opine, either directly or implicitly, about its view of the evidence.

In addition, nothing in the court's charge undermined petitioner's presumption of innocense. The jury was reminded that "the defendant is presumed innocent" and that "the protection of this presumption . . . remains with him unless the moment arrives when you as jurors are convinced from the evidence submitted that he is guilty of the crime charged beyond a reasonable doubt." Respondent's Ex. B5 at 358. Viewing the court's charge as a whole, there is no chance that the court usurped the jury's fact-finding role. It is highly unlikely that the court's marshaling of the evidence "deflected [the jury] from a conscientious discharge of their responsibility to find the facts, apply the law, and reach a fair verdict." Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985) (citations omitted). Accordingly, in finding the claim "without merit,"

13

the Appellate Division did not unreasonably apply clearly established federal law. People v. Christodoulou, 245 A.D.2d 386 (2d Dep't 1997).

6. Ineffective Assistance of Trial Counsel

Before enactment of AEDPA, federal habeas courts reviewed all ineffective assistance claims de novo. As noted above, however, AEDPA amended the law to mandate deference to state court decisions that adjudicated a petitioner's claim on the merits. 28 U.S.C. § 2254(d). Also as noted above, a state court decision is an "adjudication on the merits" requiring application of the deferential AEDPA standard of review even when it does not explicitly refer to the federal claim or discuss the reasoning for its decision, as long as it finally resolves a party's claims and is based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). Here, the Supreme Court denied petitioner's 440.10 motion on the merits, finding that trial counsel was "competent", Respondent's Ex. I4 at 4, and "conducted the case properly."[2] Respondent's Ex. I5 at 3. Thus, under Sellan, as the state court relied on substantive, rather than procedural, grounds to decide petitioner's application, this holding is an adjudication on the merits and should not be overturned unless it was an "unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Under AEDPA, a state habeas petitioner claiming ineffective assistance of counsel must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99 (2002); Aparicio v. Artuz, 269 F.3d

---

[2]The state court denied defendant's claim that his attorney was ineffective for failing to request a missing witness charge "for the additional reason that this on-the-record challenge could have been raised on defendant's direct appeal." Respondent's Ex. L.

14

78, 99 (2d Cir. 2001) ("Under AEDPA we inquire only whether the Appellate Division's rejection of this claim amounted to an unreasonable application of Strickland."). Strickland v. Washington requires a petitioner claiming ineffective assistance to prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).

Petitioner raises two ineffective assistance claims in his habeas petition: that he was denied effective assistance of trial counsel by counsel's (1) failure to request a missing witness charge with respect to Morris Richberg's failure to testify, and his (2) failure to file a notice of alibi and pursue an alibi defense.

A.  Failure to Request Missing Witness Charge

The New York Supreme Court found defendant's ineffective assistance claim arising out of the failure to request a missing witness charge to be barred because it could have been raised on direct appeal. Because the state court's decision was based on an independent state ground, this claim is procedurally barred from habeas review. Petitioner has failed to allege, much less demonstrate, cause and prejudice or a fundamental miscarriage of justice to excuse procedural default of this claim.

In any event, this claim is meritless. First, petitioner has not rebutted the strong presumption that counsel's representation fell within the range of reasonableness as measured under "prevailing professional norms." The record shows that trial counsel was highly effective throughout the proceedings, successfully arguing pre-trial to limit introduction of uncharged bad

15

acts to minimize prejudice to defendant, making a strong opening statement, conducting a powerful cross-examination of Angela Williams to expose inconsistencies between her testimony and prior statements to police and challenging her credibility due to her history of drug use, and delivering a forceful summation. Upon consideration of petitioner's 440.10 motion, the Supreme Court credited the statement of the trial judge, retired Justice Gerald Beldock, that trial counsel "handled [the] matter in a competent manner." Respondent's Ex. I2 at 3.

In addition, there is no reasonable probability that the result of the proceeding would have been different had trial counsel requested a missing witness charge, because defense counsel could not have shown that he was entitled under New York Sate law to have the court deliver such a charge. To warrant a missing witness charge under New York law, the party requesting the charge must show that (1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case, (2) the witness would naturally be expected to provide non-cumulative testimony favorable to the party who has not called him, and (3) the witness is available to such party. People v. Gonzalez, 68 N.Y.2d 424, 427 (1986). A missing witness charge should not be given if the party opposing the charge can show that "the witness'[s] whereabouts are unknown and that diligent efforts to locate him have been unsuccessful." Id. at 428; see also People v. Griffin, 100 A.D.2d 659, 660 (3d Dep't 1987).

There was evidence in the record that Morris Richberg was served with a subpoena, which he ignored. When the prosecution prepared a material witness order pursuant to N.Y. Crim. Proc. Law §§ 620.10, 620.20, 620.30, Morris Richberg disappeared. Because Richberg was not available to the people, defendant was not entitled to a missing witness charge. See Gonzalez, 68 N.Y.2d at 428-29. Defense counsel cannot be faulted for failing to request a charge

16

that was not appropriate under the circumstances. See United States v. Ben Zvi, 242 F.3d 89, 96-97 (2d Cir. 2001) (failure to make futile motion does not constitute ineffective assistance).

In any event, it cannot be said that defendant would have obtained a greater benefit had the jury been permitted to consider the adverse inference contained in the missing witness charge. Defense counsel highlighted the absence of Mr. Richberg in his summation in an effort to argue reasonable doubt to the jury. He emphasized to the jury that Ulysses Smith, another prosecution witness, had passed away, and Morris Richberg wasn't there, stating "[Y]ou don't have any of them . . . ." Respondent's Ex. B5 at 301. Because defense counsel was permitted to use the absence of Mr. Richberg to argue reasonable doubt, defendant was not prejudiced by the lack of a missing witness charge. Further, due to the strength of the testimony and evidence against petitioner, any failure to request a missing witness charge was harmless error. See Brecht v. Abrahamson, 507 U.S. 619 (1993).

B.  Failure to Pursue an Alibi Defense

Petitioner's claim that his trial counsel was ineffective for failing to file a notice of alibi and pursue an alibi defense also fails. Petitioner argues that affidavits of four witnesses "clearly exhonerated [sic] Petitioner." Pet. ¶ 11(a). According to affidavits of two individuals, Tyrone Foster and Lewis Henderson, two black males, rather than defendant, shot the victim. A misidentification defense, however, was tenuous at best. Tyrone Foster, who was outside the building, allegedly saw two black males run in and out of the building at the time of the shooting. Lewis Henderson, who alleged he was inside the apartment with the victim and others, saw only two black males, not defendant. Neither of these witnesses, however, is mentioned in the police reports. In addition, both of these individuals were facing homicide-related charges at the time of

17

defendant's trial, and both were subsequently convicted. As witnesses, they likely would have faced serious credibility attacks were they to testify on petitioner's behalf. In addition, overwhelming evidence, including eye witness testimony and ballistics evidence, refuted the defense.

Two additional individuals, Angelo Torres and Andy Muniz, were prepared to testify as alibi witnesses for petitioner. The substance of their testimony, if believed, was that from 11:30 p.m. on August 21, 1993 to 5:00 a.m. on August 22, 1993, defendant was attending a party at 564 Vanderbilt Avenue in Brooklyn. Mr. Muniz stated that he talked to defendant "throughout the night." Respondent's Ex. G. Trial counsel's strategic decision not to pursue this defense, however, was reasonable under the circumstances. First, the address of the alleged party was only six blocks from the location of the shooting, leading to the reasonable conclusion that defendant could have both attended the party and shot the victim on the night of the incident. Testimony by Muniz that he had petitioner within his sight throughout the 5 ½ hour period was unlikely to be believed.

The decision by defense counsel not to introduce either the tenuous identification defense or the weak alibi defense through these questionable witnesses was a matter of strategy. "Strategic choices of trial counsel 'are virtually unchallengeable' in habeas corpus proceedings." Bonneau v. Scully, 1991 U.S. Dist. LEXIS 7150 (S.D.N.Y. 1991) (citation omitted), aff'd without op., 956 F.2d 1160 (2d Cir. 1992); Weeks v. Senkowski, 275 F.Supp.2d 331, 341 (E.D.N.Y. 2003) (counsel not ineffective for failing to pursue trial strategy in which petitioner's alibi defense would be that he was with other murderers drinking at a different location); Walker v. Henderson, 492 F.2d 1311, 1313 (2d Cir. 1974) ("decision to call or bypass particular

witnesses is peculiarly a question of trial strategy . . . which courts will practically never second guess" in considering allegation of ineffective assistance of counsel), cert. denied, 417 U.S. 972 (1974).

For all of these reasons, the state court reasonably concluded that trial counsel's failure to request a missing witness jury charge, and his decision not to raise misidentification and alibi defenses, did not constitute ineffective assistance of counsel. Because defendant was not prejudiced and the result of trial would not have changed, the state court's conclusion constitutes a reasonable application of clearly established federal law.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because Christodoulou has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: April 14, 2005
Brooklyn, New York

SERVICE LIST:

*Pro Se Petitioner*
Nicki Christodoulou
#95-A-1329
P.O. Box 149
Attica, NY 14011


*Attorney for the Respondent*
Leonard Joblove
Shulamit Rosenblum
Marie-Claude P. Wrenn
Assistant District Attornesy
350 Jay Street
Brooklyn, NY 11201